| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | EASTERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| MICHAEL GONZALES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FERRSO, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:16-cv-01813-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF No. 25)<br><br>OBJECTIONS, IF ANY, TO BE FILED WITHIN 14 DAYS |

## I.   INTRODUCTION

Michael Gonzales ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Now before the Court is Defendants J. Garcia, A. Herrick, L. Escalante, M. Rodriguez, T. Brosmer, T. Davis, B. Zavala and A. Takara's motion to dismiss Plaintiff's Complaint. (ECF No. 25.) Defendants contend that the Complaint fails to state a claim and that Plaintiff failed to exhaust his administrative remedies.

For the following reasons, the Court recommends that Defendants' motion to dismiss be granted, in part, and denied, in part, and that this case proceed only on Plaintiff's claim against Defendants J. Garcia, A. Herrick, L. Escalante, M. Rodriguez, T. Brosmer, T. Davis, B. Zavala and A. Takara for forcible medication in violation of the Due Process Clause of the Fourteenth Amendment.

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is presently an inmate at California State Prison, Corcoran. The claims in this case arose while he was an inmate at California Correctional Institution, in Tehachapi, CA (CCI), when he was housed in 4A facility, unit 7, cell 105. Plaintiff alleges that, for approximately two months, Defendants Garcia, Brosman, B. Zavala, Herrick, Tacara, Franklin, Rodriguez, and Escalante have placed antipsychotic drugs in Plaintiff's meals. These are the officers who work the second and third watch in the 4A-7-unit. Officer Davis, a sergeant

1

1 | correctional officer supervisor, ordered the second watch staff to do this. Davis also blocked
2 | Plaintiff's mail and inmate appeals in order to keep these actions under a code of silence and
3 | deny access to the courts. The drugs in Plaintiff's meals have dangerous side attacks, which
4 | Plaintiff sets out in detail.

Plaintiff also alleges that defendants are denying Plaintiff's 602 inmate appeals on every issue. Defendants have interfered with Plaintiff's mail. Defendants refuse to process Plaintiff's 602 inmate appeals. Defendants have told Plaintiff they don't care about lawsuits or 602 appeals because the Attorney General just takes care of them. They tell Plaintiff if he wants to file complaints, the prison will make him go through the entire process.

Plaintiff attaches several 602 appeals and responses to his complaint. One of the exhibits is a response from the third level appeal regarding this issue. The appeals examiner appears to have denied Plaintiff's appeal on the basis that "staff attested they were not placing any medication inside of the appellant's food." (ECF No. 1, p. 17.)

Plaintiff also attaches a document that appears to be a complaint in state court regarding the same issue. It is not clear if this complaint was filed or refers to a pending case. (ECF No. 1, p. 8.)

### III. PRIOR SCREENING ORDER

On March 10, 2017 (prior to the appearance of the Defendants in this case), the undersigned Magistrate Judge entered a screening order. (ECF No. 14.) The Court indicated that jurisdiction existed under 28 U.S.C. § 636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction and no other parties had appeared. (Id. at 1 n.1.) After that Order was issued, however, the U.S. Court of Appeals for the Ninth Circuit held that Magistrate Judge jurisdiction does not exist until all parties (including unserved defendants) have consented. Williams v. King, No. 15-15259, 2017 WL 5180205, at *2 (9th Cir. Nov. 9, 2017) (holding that the absence of consent from the unserved defendants deprived the magistrate judge of jurisdiction to dismiss his complaint). Therefore, under the interpretation of 28 U.S.C. § 636(c) announced in Williams, the undersigned did not have jurisdiction on March 10, 2017 to dismiss claims without the consent of the Defendants.

2

1  The instant motion to dismiss requests dismissal of the entire Complaint, and the District Judge assigned to this case will make the final decision as to the claims upon consideration of these Findings and Recommendations. This decision thus covers all claims asserted in Plaintiff's complaint, without regard to the Magistrate Judge's earlier order. Therefore, the jurisdictional issue identified above is now a moot issue.

### IV. LEGAL STANDARD – RULE 12(b) MOTION TO DISMISS

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### V. ANALYSIS

#### a. Forcible Medication

Section 1983 provides a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."

3

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Harper v. City of L.A., 533 F.3d 1010, 1026 (9th Cir. 2008) (internal citations omitted). Proximate cause requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" Hemi Group, LLC v. City of New York, 559 U.S. 1, 130 (2010) (quoting Holmes v. Secs. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).

The Supreme Court has recognized a liberty interest in freedom from unwanted antipsychotic drugs. Washington v. Harper, 494 U.S. 210, 221-22 (1990); United States v. Ruiz-Gaxiola, 623 F.3d 684, 691 (9th Cir. 2010). For convicted inmates, or those awaiting trial, the "liberty interest in avoiding unwanted medication must be defined in the context of the inmate's confinement." United States v. Loughner, 672 F.3d 731, 745 (9th Cir. 2012) (quoting Harper, 494 U.S. at 222). If it is determined that an inmate is a danger to himself or others, and treatment in his medical interest, the Due Process Clause allows the State to treat an inmate with serious mental illness with antipsychotropic drugs against his will. Harper, 494 U.S. at 227; cf. Riggins v. Nevada, 504 U.S. 127, 135 (1992) ("forcing anti-psychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness."). In the context of Harper and Riggins, an invasion of the human person can only be justified by a determination by a neutral factfinder that the antipsychotic drugs are medically appropriate and that the circumstances justify their application. See Kulas v. Valdez, 159 F.3d 453, 455-56 (9th Cir. 1998).

In addition to the substantive requirements above, the administration of antipsychotic drugs "cannot withstand challenge if there are no procedural safeguards to ensure the prisoner's interests are taken into account." Harper, 494 U.S. at 233. A prisoner must be given notice and the right to be present at and participate in a hearing. See Kulas, 159 F.3d at 456.

In California, the procedural requirements for involuntary medication of prisoners is set out in Keyhea v. Rushen, 178 Cal.App.3d 526 (Cal. Ct. App. 1986). "A Keyhea order permits the long-term involuntary medication of an inmate upon a court finding that the course of

involuntary medication is recommended and that the prisoner, as a result of mental disorder, is gravely disabled and incompetent to refuse medication, or is a danger to himself or others." Davis v. Walker, 745 F.3d 1303, 1307 n.2 (9th Cir. 2014).

Here, Plaintiff has stated a claim for violation of the Fourteenth Amendment right to Due Process by alleging that he was forcibly medicated without sufficient procedural rights against Defendants Garcia, Brosman, B. Zavala, Herrick, Tacara, Franklin, Rodrigues, Escalante and Davis. Plaintiff's Complaint alleges that Defendants "have all been employed five days a week, and on different days have been placing antipsychotic drugs in [Plaintiff's] meals…" (ECF No. 1, p. 2.) He continues by stating the forcible medication has been occurring daily for two months and provides details as to some of specific occurrences, including the date and the names of the defendant. (*Id.*) He alleges that Defendant Davis is a "Sargent Correctional Officer Supervisor" who ordered staff to medicate his food. (*Id.*) Plaintiff alleges that Davis told him that he would need to "go to court to pay for all [of Plaintiff's] misconduct in prison." (*Id.*)

In the motion to dismiss, Defendants argue that Plaintiff's allegations need not be taken as true, insofar as the allegations are conclusory and involve facts about which he claims no personal knowledge. (ECF No. 25, pp. 6-7.) They contend that Plaintiff's allegations, though quite detailed, are largely speculative, and do not contain factual allegations sufficient to raise a right to relief above the speculative level. (ECF No. 36, pp. 3-4).

The Court acknowledges that Plaintiff's allegations border on the conclusory and lack a description of why Plaintiff believes this is taking place, especially by so many prison officers. At this stage in the proceedings, however, the Court is required to take Plaintiff's allegations as true and liberally construe them in his favor. See Hebbe, 627 F.3d at 342. Plaintiff has sufficient personal knowledge to allege that he ingested medication. The allegations described above are sufficient to give the Defendants fair notice of what the claim is and the grounds upon which it rests. See Twombly, 550 U.S. at 555 (providing that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)").

### b. Grievance Process

Prison officials' actions in responding to Plaintiff's grievance, alone, cannot give rise to any claims for relief under § 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Plaintiff does not state a claim based on the grievance process. As described above, there is no constitutional right to a grievance process—rather Plaintiff may be able to file a claim without exhausting that process if one is not available to him, as discussed below.

### c. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "an affirmative defense the defendant must plead and prove." Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting Jones v. Bock, 549 U.S. 199, 204, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Id. "Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden." Id.

In the motion to dismiss, Defendants argue that it is clear from the face of the Complaint that Plaintiff did not exhaust his administrative remedies, as required by the PLRA. They point to Plaintiff's request for relief section of the Complaint where Plaintiff prays that the Court

"[s]tay this case until all 602 inmate appeals and government claims are processed." (ECF No. 1, p. 6.)

However, Plaintiff complains in other parts of the Complaint that the Defendants are intentionally interfering with and denying him access to the grievance process. If it were shown that administrative remedies were unavailable to Plaintiff, he could be excused from the exhaustion requirement. See Albino, 747 F.3d at 1171 ("An inmate is required to exhaust only available remedies. [citations]"). The Supreme Court of the United States in Ross v. Blake described this exception as follows:

> [A] as Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See [Booth v. Churner,] 532 U.S. [327,] 736, 738, 121 S.Ct. 1819 [(2001]. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In Booth's words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." Id., at 736, and n. 4, 121 S.Ct. 1819. So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." Id., at 738, 121 S.Ct. 1819. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available." Tr. of Oral Arg. 23. That is a significantly higher bar than CRIPA established or the Fourth Circuit suggested: The procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. See § 7(a), 94 Stat. 352; 787 F.3d, at 698–699; *supra,* at 1855, 1857 – 1859. When an administrative process is susceptible of multiple reasonable interpretations,

> Congress has determined that the inmate should err on the side of exhaustion. But when a remedy is, in Judge Carnes's phrasing, essentially "unknowable"—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable. See Goebert v. Lee County, 510 F.3d 1312, 1323 (C.A.11 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (C.A.11 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"). Accordingly, exhaustion is not required.
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. In Woodford, we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[ ] up all but the most skillful prisoners." 548 U.S., at 102, 126 S.Ct. 2378. And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

136 S. Ct. 1850, 1859-60, 195 L. Ed. 2d 117 (2016).

Thus, the Court disagrees with Defendants that it is sufficiently clear from the face of the complaint that remedies were actually available to Plaintiff. Rather, availability of administrative remedies is a factual issue properly raised in the context of a motion for summary judgment.[1] See id. at 1166.

The Court also notes that prison authorities appear to have processed the grievance regarding the forcible medication issue, resulting in a decision from the Third Level Appeals office. (ECF No. 1, p. 17-18.)

## VI. CONCLUSION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be granted, in part, and denied, in part;

---

[1] Defendants mat file an appropriate motion for summary judgment following this order. The Court may allow discovery on availability of administrative remedies in conjunction with such a motion.

8

2. This action proceed only against: Defendants Garcia, Brosman, B. Zavala, Herrick, Tacara, Franklin, Rodriguez, Escalante and Davis for violation of Due Process under the Fourteenth Amendment; and

3. All remaining claims and Defendants be dismissed from this action.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 29, 2017**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE